IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN ELIZABETH DELIO,   )
                         )
         Plaintiff,      )
                         )
     vs.                 ) Civil Action No. 13-78-E
                         )
COMMISSIONER OF SOCIAL SECURITY, )
                         )
         Defendant.      )

O R D E R

AND NOW, this 8th day of September, 2014, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. §401, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. §405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

I.   **DISCUSSION**

Plaintiff raises several arguments as to why substantial evidence does not support the ALJ's determination. Specifically, Plaintiff argues that the ALJ committed error: (1) by failing to discuss "seven" medical exhibits from treating sources that "support[ed] SSA's own experts' assessments" regarding the severity of Plaintiff's mental impairments; (2) by concluding that Plaintiff's mental impairments were non-severe at Step Two of his determination; and (3) by failing to consider Plaintiff's non-severe mental impairments in making his RFC determination, which resulted in a deficient hypothetical to the Vocational Expert ("VE"). After conducting its own careful and independent review of the record, the Court finds that Plaintiff's contentions are without merit.

Plaintiff's first argument requires the Court to determine what evidence was in the record before the ALJ at the time of his determination, because "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." Matthews v. Apfel, 239 F3d 589, 594 (3d Cir. 2001). In her brief, Plaintiff concedes that "the record considered by the ALJ consisted of medical exhibits 1F-9F," but alleges that, prior to the hearing, she submitted "seven additional medical exhibits" from treating sources which the ALJ failed to discuss in his decision. (Doc. No. 10 at 10). In support of this position, Plaintiff cites to: (i) an electronic receipt dated August 26, 2011, which appears to document the submission of medical records from "Gettysburg Hospital, Hamot Medical Center, Dr. Konieczki, and Dr. Morey" and (ii) a "Request for Review" letter to the Appeals Council where she argued that the "records/reports of Dr. Konieczki, Dr. Morey, Hamot Medical Center, and Gettysburg Hospital" were "submitted via ERE" but were "*not entered into the record," "did not appear on the exhibit list*," and were not "discussed by the ALJ." (R. 15, 530) (emphasis added). Plaintiff thus argues

that the ALJ failed to consider the "record as a whole" because his decision does not address the records[1] referenced in those documents. (Doc. No. 10 at 10). Plaintiff also argues that because these "updated records" were "resubmitted" to the Appeals Council, the Appeals Council erred in determining that the "new medical exhibits" did not provide a basis to overturn the ALJ's decision. (Id. at 12-15).

To summarize, Plaintiff appears to argue on one hand that remand is warranted because the ALJ had the additional exhibits in the record before him but failed to discuss them; yet on the other hand, she argues that remand is warranted because the Appeals Council erred in denying review even though these records constituted "new and material evidence" that was "never seen by the ALJ." (Id. at 12-15). Significantly, Plaintiff acknowledges that there may have been a "'glitch' in the electronic records submission software" that could have prevented the records referenced in the electronic receipt from making their way onto the exhibit list that was before the ALJ at the time of the hearing. (Doc. No. 10 at 11, n. 36). In light of that acknowledgment and her admission that these four exhibits were "never entered into the record" and were not "contained on the exhibit list" before the ALJ (R. 15), the Court finds that any error in failing to ensure that the additional exhibits were incorporated into the record falls on Plaintiff and her counsel.

Indeed, given the importance that Plaintiff assigns to these "treating source" records, and the timing of their attempted submission, it was counsel's duty to ensure that this evidence was

---

[1] Although Plaintiff alleges that there were seven medical exhibits from treating sources that were not discussed by the ALJ, the electronic receipt and the request for review letter reflect the purported submission of only four exhibits on August 26, 2011: those from Hamot Medical Center, Gettysburg Hospital, Dr. Morey, and C.R.N.P Konieczki, who, for the record, is not a physician. This evidence is found in Exhibits 11F and 13F-16F of this record. The Court notes that Exhibits 10F & 12F were not discussed in any of those documents and were records that were sent only to Appeals Council.

received, included on the exhibit list, and successfully incorporated into the record at the time of the hearing. The fact that these records were sent electronically provided even more cause to ensure that their submission was successful, as the electronic receipt itself notes the potential for "errors or problems" to arise that could prevent the transaction from being processed successfully. (R. 530). Counsel for Plaintiff had every opportunity to review the exhibit list at the beginning of the hearing on September 21, 2011 and to note that there were records missing from that list. The ALJ specifically asked whether counsel had any objections to the exhibits and, at that point, counsel could have alerted the ALJ that the exhibit list was incomplete and could have requested that the ALJ hold the record open so that she could resubmit that evidence and ensure that it was properly incorporated into the record. However, Counsel stated that she had no objections to the exhibits and the ALJ received into evidence the exhibits that were before him at that time. (R. 37).

Tellingly, Plaintiff does not formally request a new evidence remand pursuant to sentence six of 42 U.S.C. § 405(g), but rather argues that remand is required because "the Appeals Council erred in failing to properly consider and weigh" the "new and material evidence" "in its decision denying review." (Doc. No. 10 at 12-15). The Court's scope of review, however, is limited to the record that was before the ALJ, and in order to seek remand based on evidence that was not submitted to the ALJ, Plaintiff must demonstrate that the evidence relied upon is "new" and "material," and that "good cause" existed for why such evidence was not submitted to the ALJ. Matthews v. Apfel, 239 F.3d 589, 592-94 (3d Cir. 2001). Plaintiff does not attempt to argue "good cause" in her brief and the Court finds that Plaintiff cannot establish good cause under these facts. However, in order to give Plaintiff the absolute benefit of the doubt, and in order to satisfy itself that these records do not contain material evidence that undermines the ALJ's

findings, the Court has reviewed the four exhibits referenced in the August 26, 2011 receipt and the "Request for Review" to the Appeals Council (Exhibits 11F, 13F-16F), as well as the exhibits that were submitted for the first time to the Appeals Council and not referenced in the receipt or the review letter (Exhibits 10F & 12F). See (R. 4-6). After such review, the Court is satisfied that Plaintiff falls woefully short of meeting the requirements for a new evidence remand because even if she could demonstrate good cause, there is no "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Kelley v. Comm'r of Soc. Sec., 566 F.3d 347, 351, n.11 (3d Cir. 2009).[2]

---

[2] As noted, the four exhibits referenced in the electronic receipt and the Request for Review letter are records from Hamot Medical Center, Dr. Morey, Gettysburg Hospital, and C.R.N.P. Koniezcki (Exhibits 11F, 13F-16F). A vast majority of these records are duplicative of the evidence that was considered by the ALJ and discussed in his decision. For example, Exhibit 11F contains duplicate records of the May 2010 EEG Report (R. 26-27, 304), the May 2010 "PSG" sleep study (R. 27, 306), and Plaintiff's January 2010 seizure. (R. 26, 320-26). The remainder of the records in 11F fail to satisfy the materiality requirement as they reference (i) a normal CT scan of the brain, (ii) an MRI of the brain which revealed "mild to moderate white matter disease," and (iii) an abnormal EEG report from 1/22/2010, which is immaterial in light of the fact that the ALJ discussed the two follow up EEG reports from February and May of 2010 which revealed normal results. (R. 27; 327-333).

Exhibit 13F contains records from Dr. Pamela Morey, Plaintiff's primary care physician, which document: (i) a normal neurological exam and notes from a wellness exam dated May 16, 2011, where Plaintiff relayed that she was "feeling good" and had a new young boyfriend (R. 353); (ii) several medical refills; and (iii) a June 15, 2010 treatment note that was already in the record before the ALJ. (R. 233; 353-62). The only record in this exhibit that is even arguably material is the hospital admission record from St. Vincent Hospital on February 21, 2011 which indicated that Plaintiff was taken to the hospital after she handed her son a suicide note. (R. 363-382). Plaintiff was upset about her breakup with her ex-fiancé and could not cope with the fact that he had already moved on to another woman. However, by Plaintiff's own admission, she was not intending to hurt herself, and merely was trying to show her fiancé that she was having a hard time with their separation. Shortly after her admission, her "mood improved," she "reported good sleep," she "was pleasant and cooperative during her stay" and she requested discharge in less than 48 hours. She "did very well on [] medications" and denied any suicidal or homicidal ideation. (Id. at 363). Although she was assessed with a GAF score of 25 upon admission and 45 upon discharge, the materiality of those scores is substantially diminished by: (i) the fact that her mental status examination noted that her thought process was "logical and linear," that she had good insight and judgment, and that her cognition was "intact." Additionally, three months after this hospital admission, she reported to Dr. Morey that she was "feeling good" and that she already had acquired a new boyfriend. (R. 353). The remainder of the records in 13F are immaterial because they only serve to support the ALJ's finding that Plaintiff's mental impairments were non-severe. (R.383-400). Indeed, Plaintiff was documented to have benign physical and mental status examinations at North Shore Neuroscience in February of 2011 and August of 2010 and it was consistently reported that she had "no mood changes, no depressive symptoms, no anxiety, no hallucinations" and "normal attention and

Accordingly, it being clear that Exhibits 1F-9F were the only medical records before the ALJ at the time of his decision, and it further being clear that a new evidence remand is not warranted based on Exhibits 10F-16F because good cause and materiality could not be shown, the Court turns to the remainder of Plaintiff's arguments and finds that none of them carry any merit based on the record that was before the ALJ.

*The ALJ's Step Two Determination*

Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff's mental impairments were non-severe and, to that end, she argues that the ALJ improperly rejected the opinions of the state agency psychologists whose findings supported the conclusion that Plaintiff had severe mental impairments. In finding that Plaintiff's impairments were non-severe, the ALJ did state that Plaintiff was "neurologically intact according to the medical evidence of record," but contrary to Plaintiff's assertion, that was not his sole justification for his finding; to be sure, the ALJ went on to discuss the evidence he relied on to

---

concentration." (R. 385; 390).

      Exhibit 14F is a duplicate of the May 26, 2010 EEG Report that was explicitly discussed by the ALJ. (R. 402-03). Exhibit 15F contains: (i) records from Hamot Medical Center which document the January 2010 seizure that the ALJ already was aware of (R. 26; 408-18, 443, 465-70, 481-86, 516); (ii) duplicate records of the CT scan, MRI scans, and the abnormal EEG report from January of 2010 contained in Exhibit 11F (R. 419-26, 471-76, 492-99); (iii) duplicates from the May 26, 2010 sleep study that was discussed by the ALJ (R. 429-42, 502-15); (iv) records from the Gettysburg hospital which documented Plaintiff's May 2011 seizure that the ALJ was already aware of by way of her hearing testimony (R. 26; 450-455, 523-24, 528); and (v) duplicates of the May 26, 2010 EEG report that was discussed by the ALJ and also contained in Exhibit 11F (R. 27; 459-60).

      Exhibit 16F is similarly unavailing, as it contains duplicate records of: (i) the February 2011 and August 2010 visits at the North Shore Neuroscience that were contained in Exhibit 13F (R. 533-42, 578-86); (ii) the May 16, 2011 wellness exam with Dr. Morey and the medication refill notes which were contained in Exhibit 13F (R. 353; 548-53, 556-57); (iii) the June 15, 2010 visit with Dr. Morey which was in the record before the ALJ (R. 233; 554-55); (iv) the February 21, 2011 hospital admission to Saint Vincent on that was contained in Exhibit 13F (R. 558-77); and (v) medication refill requests. (R. 587-94).

      Exhibits 10F and 12F are also immaterial and duplicative, as Exhibit 10F contains the record from the Gettysburg Hospital documenting the May 2011 seizure of which the ALJ already was aware; (R. 295-96), and Exhibit 12F contains another copy of the February 2011 and August 2010 visits at the North Shore Neurosciences. (R. 338-47).

conclude that any mental impairments caused no more than mild limitations in her ability to function, and in addition to citing Plaintiff's "extensive" activities of daily living and the fact that she was working part-time as a radiologist support specialist at the time of the hearing, the ALJ also relied on objective medical evidence in the form of a "physical examination and mental status examination from May 2010," which revealed, among other things, that Plaintiff "was oriented to person, place, time, and general circumstances," that her "recent memory and remote memory were intact," and that "she had normal attention and concentration." (R. 23-24).

With respect to Plaintiff's argument concerning the ALJ's evaluation of the opinion evidence, the Court finds that the ALJ's decision, read as a whole, suffices to explain the basis for his assignment of minimal weight to the opinions of the state agency consultants, especially in light of the medical evidence before him. It is well established that, although administrative law judges must consider the finding of state agency physicians and psychologists as opinion evidence, they are not bound by their opinions. See Brown v. Astrue, 649 F.3d 193, 196-97 (3d Cir. 2011) (An "ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences); see also 20 C.F.R. §§ 404.1527(f).

The record makes clear that the ALJ did consider the agency opinions in this case. Indeed, after the ALJ set forth the medical and non-medical evidence of record, he directly addressed the opinion of Dr. Dubro, the state agency consultative examining psychologist, recognized that Dr. Dubro's findings conflicted with his own, and explained that he assigned his findings minimal weight because he found that that they were unsupported by and inconsistent with the evidence of record as a whole. (R. 22-28). Furthermore, the ALJ also cited to the non-examining consultant opinions in Exhibits 6F and 8F, and while their specific findings could have been discussed in more detail, the ALJ's decision made clear that he was aware of the

contradictory opinions in the record, that he had considered them against the medical evidence, and that he had determined that they were entitled to minimal weight because they did were unsupported by and inconsistent with the record as a whole. Thus, the ALJ abided by his duty to address all the probative evidence in the record and he did not ignore the evidence that conflicted with his findings; after laying out the medical evidence, he explained that he could not give substantial weight to the agency opinions because the medical evidence did not support their finding that Plaintiff's mental impairments caused any more than mild limitations in her ability to function. See Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981). The ALJ thus resolved the conflicts that existed between the opinion evidence and his decision, and after careful review, the Court finds that substantial evidence supports the ALJ's decision to assign minimal weight to the agency opinions.

Accordingly, based on the medical evidence of record that was before him, the Court finds that substantial evidence supports the ALJ's non-severity finding at Step Two. However, even assuming that the ALJ had erroneously concluded that Plaintiff's mental impairments were non-severe, any error would be harmless because he still found that her "seizure disorder, by history" was a severe impairment at Step Two and thus resolved that step in her favor. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir.2005)).

*ALJ's RFC Determination*

Plaintiff argues that even if the Court were to find harmless error at Step Two, the ALJ still committed reversible error because he failed to consider her non-severe mental impairments when he made his RFC finding; consequently, she argues that substantial evidence does not support the ALJ's RFC determination and his concomitant hypothetical to the VE because his

RFC finding failed to include restrictions accounting for her non-severe mental impairments. Again, the Court finds no merit to this argument.

Plaintiff is correct in her assertion that an ALJ must consider even non-severe impairments when making his RFC assessment. 20 CFR § 404.1545(a)(2). However, the ALJ did not fail to consider her non-severe mental impairments when he made his RFC determination. Indeed, in finding that Plaintiff retained the ability to perform work consistent with his RFC assessment, the ALJ considered her subjective complaints of disabling cognitive impairments and assessed them against her extensive daily activities, her normal objective physical and mental status examination in May of 2010, and the fact that she was already engaged in part time work at the time of the hearing. The ALJ repeatedly referenced her allegations of concentration and memory loss issues but found that her "allegations and subjective complaints were not fully credible." (R. 27). The ALJ also discussed Dr. Dubro's opinion during his RFC finding which also serves to demonstrate his consideration of her non-severe mental impairments at the RFC stage. Thus, the Court finds that the ALJ properly considered the effect of her non-severe mental impairments when he made his RFC finding.

Turning to Plaintiff's argument that the RFC failed to account for her "mild limitations" in social functioning and concentration, persistence, or pace that he had found at Step Two, it is well established that "the determination of the claimant's RFC is the exclusive responsibility of the ALJ" and that "the ALJ need only include in the RFC those limitations which he finds credible." Garrett v. Comm'r of Soc. Sec., 274 Fed. Appx. 159, 163 (3d Cir. 2008). Plaintiff argues that because the ALJ found mild limitations in his paragraph B analysis at Step Two, he was required to incorporate some restriction into the RFC to account for those limitations. However, the ALJ explained that those findings were not an RFC assessment and in any event,

he found that any deficiencies in social functioning and concentration persistence or pace, did not cause any more than minimal limitations in her ability to perform work consistent with his RFC finding. Thus, to the extent that the ALJ omitted any restrictions in his RFC assessment accounting for these mild limitations, he did so because he did not find Plaintiff's allegations and subjective complaints of serious memory and concentration issues to be fully credible. Keeping in mind that Exhibits 1F-9F were the only medical evidence of record properly before the ALJ at that time of his decision, and further considering the fact that the only non-opinion evidence was set forth in Exhibits 1F-4F, the Court finds that the ALJ incorporated into his RFC assessment all the limitations that were credibly established by the evidence of record and further finds that substantial evidence supports his RFC determination as well as his hypothetical to the VE.

## II.   CONCLUSION

For the reasons just stated, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff is not disabled. Therefore, IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment (document No. 9) is DENIED and defendant's Motion for Summary Judgment (document No. 15) is GRANTED.

s/Alan N. Bloch<br>
United States District Judge

ecf:      Counsel of record